**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FRANK DIPPOLITO, | : | |
| | : | Civil Action No. 11-6990 (JEI) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MS. D. ZICKEFOOSE, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES**:

Petitioner pro se
Frank Dippolito
47356-066
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

Attorney for Respondents
Elizabeth Ann Pascal
U.S. Department of Justice
Office of the U.S. Attorney
401 Market Street
P.O. Box 2098
Camden, NJ 08101

**IRENAS**, District Judge

Petitioner Frank Dippolito, a prisoner currently confined at FCI Fort Dix, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241[1] originally naming numerous

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts

respondents to the Petition but the Court having terminated all respondents except for "Ms. D. Zickefoose," warden of the facility at which Petitioner is incarcerated. Respondent made an application for leave to file a Motion to Dismiss in Lieu of Answer. The Court granted Respondent's request and a Motion to Dismiss was filed (docket entry no. 13). Respondents bring their motion to dismiss arguing that this Court lacks subject matter jurisdiction over the petition since the issues raised in the petition were not ripe for review by this Court when the petition was filed. Petitioner subsequently filed two motions (docket entry nos. 17 and 19).

Because this Court lacks jurisdiction to consider this Petition, this Court will grant the Motion to Dismiss, dismiss the Petition for lack of jurisdiction, and dismiss Petitioner's motions as moot.

### I.   BACKGROUND

Petitioner brings this petition claiming that he is being denied the ability to earn incentive to participate in the Second Chance Act reentry incentive program because he had not yet been assessed for placement in a Residential Re-Entry Center.

---

and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Petitioner also claims that the Federal Bureau of Prisons failed to implement rules or policies with respect to the re-entry initiative program. Respondents bring their motion to dismiss arguing that the issued raised in the petition are not ripe for judicial review because Petitioner was not within 17 to 19 months of his projected release date.

## II. DISCUSSION

### A. The Second Chance Act

Residential Re-Entry Center ("RRC") assignments are governed by 18 U.S.C. § 3624(c)(1), which was amended in 2007 by the Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008. In essence, the Act extends the maximum amount of time that the Bureau of Prisons may place an inmate in an RRC to twelve months.

The Second Chance Act provides, in pertinent part:

> (1) In General.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
>
> ...
>
> (4) No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

3

>...
>
>(6) Issuance of regulations.--The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is--
>
>>(A) conducted in a manner consistent with section 3621(b) of this title;
>>
>>(B) determined on an individual basis; and
>>
>>(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c).

As noted in the statute, the BOP was directed to issue regulations not later than 90 days after the date of the enactment of the Second Chance Act, to ensure that placement determinations would be conducted consistently with 18 U.S.C. § 3621(b), that the determinations would be individualized, and that the duration of placements would be sufficient.  Section 3621(b) provides:

>(b) Place of imprisonment.  The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
>>(1)  the resources of the facility contemplated;
>>(2)  the nature ad circumstances of the offense;

>   (3) the history and characteristics of the prisoner;
>   (4) any statement by the court that imposed the sentence - (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
>   (5) any pertinent policy statement issued by the Sentencing Commission pursuant to Section 994(a)(2) title 28 ... .
>
>   ... Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment.

On April 14, 2008, the BOP issued a "Memorandum for Chief Executive Officers," providing staff guidance for implementing the Second Chance Act. The memorandum indicated that the BOP's then-existing time frame on pre-release community confinement placement was no longer applicable and should not be followed, that certain adjustments were necessary to the Program Statement 7310.04, concerning review of inmates for pre-release RRC placement, and that each inmate's pre-release RRC decision must be analyzed and supported under the § 3621(b) factors, cited above. Among other guidelines, the memorandum provided:

>   While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

5

BOP Memo, April 14, 2008, as cited in Strong v. Schultz, 559 F. Supp. 2d 556, 562 (D.N.J. 2009).

Subsequently, the BOP issued the required regulations, effective October 21, 2008, setting forth procedures for evaluating inmates' placement decisions to RRCs or home detention. See 28 C.F.R. §§ 570.20-570.22. The regulations do not include the requirement in the April 14, 2008 memo for approval from the Regional Director for pre-release RRC placement beyond six months.[2]

---

[2] Title 28 of the Code of Federal Regulations, section 570.22 states: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

The time frames noted are set forth in section 570.21, which provides:

> (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.
>
> (b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.
>
> (c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

B.   Exhaustion of Administrative Remedies

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.[3]  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a
> factual record and apply its expertise facilitates
> judicial review; (2) permitting agencies to grant the

---

28 C.F.R. § 570.21.

[3] The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

> relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp. 2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, at *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

    The RRC determination had not yet been issued at the time of filing the Petition.  Petitioner chose to file the instant petition before a decision was made regarding his RRC placement.  Thus, it would have been impossible for Petitioner to have exhausted his administrative remedies stemming from a decision regarding his RRC placement upon filing this Petition.  This Court finds no reason to excuse the failure to exhaust administrative remedies.

Furthermore, since Petitioner's RRC placement had not yet been evaluated and determined at the time of Petitioner's filing of the Petition, Petitioner had no standing to challenge the BOP determination which had not yet been rendered when the Petition was executed.  See Stanko v. Obama, 393 Fed. App'x 849 (3d Cir. 2010)(the inmate lacked standing to challenge the decision, which had not yet been made regarding the inmate's eligibility for placement in an RRC, because any injury based on the application of the Second Chance Act to him was speculative).

Finally, this Court notes that even if Petitioner had not filed this Petition prematurely and even if Petitioner did exhaust his remedies pertaining to his RRC placement at a later date subsequent to the actual RRC placement determination, nothing in the Second Chance Act entitles Petitioner to a halfway house placement for the full year as he is seeking.  Those pre-release placement decisions are committed, by statute, at the discretion of the Director of the Bureau of Prisons.

### III.   CONCLUSION

For the reasons set forth above, Respondent's motion to dismiss is GRANTED.  The petition will be dismissed with prejudice and Petitioner's pending motions will be denied as moot.  An appropriate order follows.

Dated: November 1, 2012

S/Joseph E. Irenas
JOSEPH E. IRENAS
United States District Judge